**CAMERON MUTUAL INSURANCE CO., Respondent,**

v.

**Mark MARLER, Karen Marler, and John Bird, Appellants.**

**No. 68565.**

Missouri Court of Appeals,
Eastern District,
Division Four.

May 7, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 17, 1996.

Application to Transfer Denied
Aug. 20, 1996.

Belz & Jones, Mark Belz, St. Louis, for appellant.

Coffelt & Coffelt, Ross T. Anderson, St. Louis, for respondent.

AHRENS, Presiding Judge.

In this consolidated breach of a contract case and declaratory judgment action, defendant Mark Marler appeals the grant of a summary judgment in favor of plaintiff Cameron Mutual Insurance Company. We affirm.

On appeal from a summary judgment, we "review the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Our review of summary judgment is "essentially *de novo*" and the nonmovant is given the benefit of all reasonable inferences. *Id.* It is unnecessary to defer to the decision of the trial court because summary judgment is an issue of law and the appellate court is presented with the same record as was viewed by the trial court. *Id.*

The undisputed facts are as follows: Bluford and Marian Lewis inherited a farm ("the property") in the early 1960s in Iberia. Since then, they have used the house which is located on the farm as a vacation home; their primary residence was in Webster Groves. During all times relevant to the instant case, the Lewises carried one premises liability policy on their Webster Groves property and one on their Iberia property. The latter policy, which was underwritten by plaintiff, is the central focus of this appeal.

Beginning in 1988 and continuing to the time of the instant trial, the Lewises permitted Martha, John and Michael Bird to reside in the Iberia house. Martha was the Lewises' daughter, John was their son-in-law, and Michael was their grandson. Occasionally the Lewises would allow a few friends to hunt on the Iberia property. On one of these occasions, October 28, 1990, John Bird negligently shot and injured defendant, a friend of the Lewises.

Defendant brought suit against John, who filed a third-party claim against plaintiff alleging he was insured under the Iberia policy. Judgment was entered in favor of defendant and against John in the amount of $100,000. Subsequently, John assigned his rights under the Iberia policy to defendant.

After plaintiff refused to satisfy the judgment against John, defendant filed suit claiming breach of contract. Plaintiff countered by filing a declaratory judgment action against defendant asking the court to declare that plaintiff is not obligated under its policy with the Lewises. After the two actions were consolidated, both parties moved for summary judgment. Plaintiff's motion was granted on June 8, 1995, and defendant's motion was denied. Defendant appeals the granting of plaintiff's motion in a timely fashion.

■ The dispositive issue on appeal is whether there exists a genuine issue of material fact as to whether John's actions were covered by the Iberia policy. The policy provides liability coverage for any "insured" and defines the term "insured," in pertinent part, as follows:

1. Insured. The unqualified word "insured" includes

 A. The named insured

 B. If **residents of his household,** his spouse, the relatives of either, and any other person under the age of twenty-one in the care of an insured ... (emphasis added)

■ Under the rules of contract construction, ambiguous language in an insurance policy shall be construed against the insurer because the insurer, as drafter of the agreement, is in a better position to avoid ambiguity. *Peters v. Employers Mutual Casualty Co.,* 853 S.W.2d 300, 301–02 (Mo. banc 1993); *State Farm Mutual Auto. Ins. Co. v. Carney,* 861 S.W.2d 665, 669 (Mo.App.1993). However, a court will not create an ambiguity where none exists. *Mazzocchio v. Pohlman,* 861 S.W.2d 208, 211 (Mo.App.1993). None exists here. The term "household" is unambiguous when used in "homeowners" insurance policies. *Watt by Watt v. Mittelstadt,* 690 S.W.2d 807, 815–16 (Mo.App.1985). It describes an individual who is one of a

collection of persons, whether related by consanguinity or affinity or not related at all but who live or reside together as a single group or unit which is of a permanent and domestic character, with one head, under one roof or within a single curtilage; who have a common subsistence and who direct their attention toward a common goal consisting of their mutual interest and happiness. *Id.*

In applying this unambiguous definition, the *Watt* court held the evidence unequivocally revealed that an adult child did not reside in his parents' household even though he and his wife lived on the second floor of his parents' home. In making this determination, the court considered many factors, including: (1) the purposeful physical separation of the two couples by turning the upstairs portion of the house into a self-contained apartment; (2) an agreement to share the financial costs associated with the upstairs apartment; (3) the complete self-reliance in paying for personal and living expenses; and (4) the total independence in making family decisions.

In the instant case, the record, when viewed in the light most favorable to defendant, shows that there was a slightly increased level of interaction between the Birds and the Lewises stemming from the Birds' residence in the Lewises' vacation home. Without any discussion or agreement, the Lewises paid for maintenance and improvements of the property "because it [was] their house", while the Birds performed some of the maintenance on the property in order "to have a comfortable home". The Lewises permitted the Birds to live on the Iberia property rent free and each family paid for part of the utilities.

Other then this division of labor and of financial responsibilities, there was no integration of the two families. Each family paid for their own personal expenses and other expenditures, each family made independent personal decisions, and each family performed their day-to-day and week-to-week activities to the exclusion of decision and participation by the other family. Furthermore, the Lewises continued to use the property as a vacation home for themselves and their friends.

We find that the relationship between the Birds and the Lewises was in the nature of guests and their hosts. The Lewises' payment of most of the costs of the Iberia property and control of the use of the prop-

erty was insufficient, in and of itself, to create a unified household. We hold that, as a matter of law, the two families did not live or reside together as a single group of a permanent and domestic character. The two family units constituted two separate households under separate management. See *Cobb v. State Sec. Ins. Co.,* 576 S.W.2d 726, 738 (Mo. banc 1979). John was a member of the Bird household, not the Lewis household. No genuine issue of material fact exists regarding John's liability coverage under the Iberia insurance policy. The trial court did not err in granting summary judgment to plaintiff.

Judgment affirmed.

PUDLOWSKI and SIMON, JJ., concur.